UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SARGENT MANUFACTURING CO., : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 3:08-cv-408 (VLB) |
| CAL-ROYAL PRODUCTS, INC., : | |
|     Defendant. : | |
| : | |
| : | July 27, 2012 |

**MEMORANDUM OF DECISION ADDRESSING MOTIONS IN LIMINE [Dkt. #178-180, and #183, 185, and 187]**

    **I.**    **Cal-Royal's Motion in Limine No. 1 to Exclude Evidence, Opinion, and Argument on Sargent's Claim of Willfulness**

Cal-Royal's Motion in Limine regarding Sargent's claim of willfulness addresses three topics: (1) Cal-Royal seeks to prescribe the order in which the two components of the willfulness claim should be considered in light of the Federal Circuit's recent decision in *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003 (Fed. Cir. June 14, 2012) holding that the objective component must be decided by the court as a question of law; (2) Cal-Royal seeks to exclude Sargent's evidence as to pre-filing willfulness; (3) Cal-Royal seeks to exclude Sargent's evidence as to post-filing willfulness.

    A.  Order of Willfulness Components

In *Bard*, the Federal Circuit further developed the standard for willfulness articulated by *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007). As this Court recognized in its summary judgment decision, *Seagate* overruled the previous standard for willfulness "which was 'more akin to mere negligence,'"

1

and established a two-prong test for willfulness. *Bard*, 682 F.3d at 1005 (quoting *In re Seagate*, 497 F.3d at 1371). The first prong of the test requires the patentee to show "by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Seagate*, 497 F.3d at 1371. If this "threshold objective standard is satisfied, the patentee must also demonstrate that this objectively defined risk [ . . . ] was either known or so obvious that it should have been known to the accused infringer." *Id.* In *Bard*, the Federal Circuit provided further guidance regarding the application of this two-prong standard, reasoning that the objective prong presents mainly a question of law, as it "entails an objective assessment of potential defenses based on the risk presented by the patent. Those defenses may include questions of infringement but also can be expected in almost every case to entail questions of validity that are not necessarily dependent on the factual circumstances of the particular party accused of infringement." 682 F.3d at 1006. The Federal Circuit therefore concluded that this prong "is best decided by the judge as a question of law." *Id.* at 1006-007. In setting forth this directive, the Federal Circuit acknowledged the difficulty in isolating questions of law from questions of fact, and provided instruction on how to proceed in cases of purely legal questions and in cases of mixed questions of law and fact:

> "When a defense or noninfringement theory asserted by an infringer is purely legal (e.g. claim construction), the objective recklessness of such a theory is a purely legal question to be determined by the judge;" however, in the more situation, "[w]hen the objective prong turns on fact questions, as related for example, to anticipation, or on legal questions dependent on the underlying facts, as related, for example, to questions of obviousness,

2

> the judge remains the final arbiter of whether the defense was reasonable, even when the underlying fact question is sent to a jury." *Id.* at 1007. (citations omitted).

Therefore, combining the instructions set forth in both *Seagate* and *Bard*, it is clear that the objective prong of the willfulness analysis is a threshold issue which must be satisfied before advancing to consider the subjective prong. *See Seagate*, 497 F.3d at 1371 (holding that only "[i]f this threshold objective is satisfied," must the patentee proceed to satisfy the subjective prong). This threshold issue asks the court to resolve "the ultimate legal question of whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent," after allowing the jury to determine any underlying facts if the question of objective recklessness presents a mixed question of law and fact. *See Bard*, 682 F.3d at 1006-07.

Accordingly, to the extent Cal-Royal's motion in limine requests that the Court allow the jury to resolve the subjective prong before the Court decides the objective prong, this request is DENIED. The Court will present any questions of fact related to objective recklessness to the jury in the form of interrogatories. After the jury has answered the interrogatories, the Court will then resolve the legal question of objective recklessness. If, on the basis of any determinations of fact made by the jury if such fact questions exist, the Court finds that the objective recklessness prong has been satisfied, the Court will then present the question of subjective recklessness to the jury along with the remainder of the case.

B. Evidence of Pre-Filing Willfulness

3

Cal-Royal seeks to exclude Sargent's evidence regarding pre-filing willfulness asserting that the evidence Sargent will present as to pre-filing willfulness will be "woefully insufficient to meet its burden to show recklessness by clear and convincing evidence in light of undisputed contrary evidence."[Dkt. #183, p. 5].

To the extent that Cal-Royal argues that "it is unfairly prejudicial to a defendant to be accused of willful infringement, when there is no evidence to support it," this argument is a thinly-veiled attempt to relitigate a question already decided by the Court on summary judgment. Cal-Royal's partial motion for summary judgment requested that the Court grant summary judgment in favor of Cal-Royal on Sargent's claim of willfulness, arguing that no questions of material fact existed regarding willfulness, and that the undisputed facts demonstrated that no reasonable jury could find that Cal-Royal willfully infringed Sargent's patent. The Court denied this motion, finding that genuine questions of material fact remained regarding willfulness, particular in light of Cal-Royal's continued sales of the infringing product even after being notified of Sargent's claim of patent infringement upon the filing of this lawsuit and after having asked their manufacturer to design a new non-infringing product. Rather than simply sell that new product, Cal-Royal admittedly continued to sell the allegedly infringing product, seeking to exhaust its inventory. The Court therefore denied Cal-Royal's motion for summary judgment, holding that in light of this evidence, genuine questions of material fact remained regarding willfulness such that a reasonable jury could in fact find that Cal-Royal had acted willfully. Therefore, Cal-Royal's

4

argument that that it would be prejudicial to allow Sargent to present evidence as to pre-filing willfulness because there is simply no evidence to support this claim is curious in light of the Court's prior summary judgment decision.

Cal-Royal's argument as to pre-filing willfulness is also untimely because it asks the Court to anticipate, evaluate and weigh Sargent's evidence before such evidence has even been presented. Such request would be more appropriately raised as a motion for judgment as a matter of law following the close of Sargent's case at trial, asserting that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).

Lastly, Cal-Royal argues that because Sargent's evidence as to pre-filing willfulness is "lacking," the jury is likely to infer willfulness on the basis of ethnic stereotypes, noting that Cal-Royal's principals are Persian and their manufacturer is Taiwanese. Specifically, Cal-Royal argues that the jury might infer "that Cal-Royal should have known that it's manufacturer, being Taiwanese was probably knocking off somebody's product, and that being of Middle Eastern origin (Iran), it is more likely that they were in league with the supplier." [Dkt. #183, p. 16]. Further, Cal-Royal argues that "[t]here is a pretty good chance that some members of the jury believe that Sharia law is a threat to our legal system and the President of the United States is a Muslim. To permit Sargent to pursue the issue of willfulness on such thin evidence creates a high risk that the jury, lacking evidence, will decide the case based on ethnic stereotypes." *Id.* Not only is this argument erroneously predicated on the assumption that Sargent's evidence as

to willfulness is thin, asking the Court to anticipate and weigh such evidence before it has even been presented, but Cal-Royal offers no factual or legal support for this assertion.

Prior to trial, the Court will conduct jury selection, relying at least in part on the voir dire questions suggested by the Parties themselves. During this jury selection process, the Court is *obligated* to impanel an impartial jury. *See U.S. v. King*, No. 94 CR 455 (LMM), 1998 WL 50221, at *6 (S.D.N.Y. Feb. 5, 1998). Moreover, as the Supreme Court has instructed, "[a] jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Therefore it is entirely improper to assume that the jury selected and impaneled in this case will decide the case on the basis of racial or ethnic prejudice, rather than by carefully following the Court's instructions and applying the instructions to the evidence as presented at trial.

Finally, the Court notes that Cal-Royal's argument is also illogical. Essentially, Cal-Royal argues that unless a litigant has clear evidence of willfulness, a claim of willfulness may not be pursued against a foreign company or a company utilizing a foreign manufacturer as there is an inherent and unavoidable risk that a verdict will be entered against the foreign party on the basis of sheer prejudice alone. Cal-Royal presents absolutely no legal support for this argument that claims for willful infringement against foreign companies should be subject to a preliminary assessment to determine the likelihood of success on the merits. Moreover, in the current case, in denying Cal-Royal's summary judgment motion, the Court has already determined that in fact a

6

reasonable jury *could* find that Cal-Royal willfully infringed Sargent's patent. Therefore, for all the aforementioned reasons, there is absolutely no basis to assume that there is a risk that a willfulness verdict will be entered against Cal-Royal on the basis, in whole or in part, of racial or ethnic prejudice by the jury.

Accordingly, Cal-Royal's motion in limine seeking to exclude all evidence as to pre-filing willfulness is DENIED.

C.  Evidence of Post-Filing Willfulness

Cal-Royal seeks to exclude Sargent's evidence regarding post-filing willfulness for a variety of reasons. First, Cal-Royal seeks to preclude the testimony of Sargent's expert, Larry Nixon, arguing that Nixon's testimony related to post-filing willfulness will be mainly focused on critiquing the opinions of George Hoover, relied upon by Cal-Royal, concluding that Sargent's '870 patent was invalid and that Cal-Royal did not infringe the patent. Cal-Royal argues that this testimony would be lengthy and complex, and would likely confuse the jury, without offering any probative value because it is insufficient to establish willfulness. To the extent that this argument, yet again, improperly asks the Court to anticipate and weigh evidence that has not yet been presented, this request is premature and would more appropriately be raised as a motion for judgment as a matter of law following the close of Sargent's evidence.

Cal-Royal next seeks to exclude Sargent's claim of post-filing willfulness by re-raising an argument raised in its motion for summary judgment, contending that Sargent cannot pursue a claim of post-filing willfulness without previously seeking a motion for preliminary injunction. The Court has already addressed this

7

argument on summary judgment and found it to be misguided. Although *Seagate* expressed a concern that allowing a patent-holder to pursue a claim of post-filing willfulness without having previously sought to enjoin the alleged infringers conduct could allow the patent-holder to inflate the amount of damages ultimately recoverable, thereby holding that ordinarily, a patent-holder who does not seek a preliminary injunction should not be allowed to pursue a claim of post-filing willfulness, the *Seagate* Court expressly recognized that in some cases, a preliminary injunction may not be attainable even if the patent-holder is able to establish a likelihood of success on the merits, and therefore the Court held that in such cases, "whether a willfulness claim based on conduct occurring solely after litigation began is sustainable will depend on the facts of each case." *Seagate*, 497 F.3d at 1374.  Relying on this language, the Court denied Cal-Royal's motion for summary judgment as to Sargent's claim of post-filing willfulness, finding persuasive Sargent's argument that seeking a preliminary injunction would have been futile where one of the elements necessary to obtain a preliminary injunction, irreparable harm, could not be satisfied, where , as this lawsuit demonstrates, monetary damages can compensate for patent infringement. Accordingly, as this argument has already been addressed and rejected on summary judgment, it remains unavailing.

   Similarly, Cal-Royal raises two additional arguments which were rejected on summary judgment. Cal-Royal contends that Sargent's claim of post-filing willfulness should be excluded entirely where Sargent's evidence of post-filing willfulness is insufficient to allow a reasonable jury to find in its favor. In finding

8

that genuine issues of material fact exist such that a reasonable jury could find that Cal-Royal willfully infringed Sargent's patent after the filing of this lawsuit, this Court explicitly rejected this argument. Accordingly, Cal-Royal's motion in limine to exclude Sargent's evidence of post-filing willfulness is DENIED.

Cal-Royal is admonished to be mindful of the impropriety of raising issues previously decided by the court in contravention of the rules of this court and Second Circuit precedent regarding the proper timing of and bases upon which to file motions for reconsideration. Cal-Royal did not seek reconsideration of the Court's decision on summary judgment and the time within which to do so has long since passed.

For the foregoing reasons, Cal-Royal's motion in limine to exclude evidence, opinion, and argument on Sargent's claim of willfulness is DENIED.

II.   Cal-Royal's Motion in Limine to Exclude John Crawford's Testimony Re: Lost Profits, Prejudgment Interest, and Reasonable Royalty

Cal-Royal seeks to exclude Sargent's expert, John Crawford's testimony regarding lost profits, prejudgment interest, and reasonable royalty.

A.  Lost Profits

First, Cal-Royal argues that Crawford's testimony regarding lost profits should be excluded, asserting that his opinion regarding "reasonably acceptable substitutes" inappropriately limits acceptable substitutes to locks incorporating all of the features of the patent, thereby failing to consider several mortise locks which Cal-Royal purports constitute acceptable noninfringing substitutes. Sargent disputes the assertion that Crawford's consideration of reasonably acceptable substitutes tracked precisely the scope of the patent, noting several

9

features of the patented design which were not considered by Crawford in identifying substitutes for purposes of the lost profits analysis.

The amount of damages recoverable for patent infringement is a question of fact, upon which the patent-holder bears the burden of proof. *See Bic Leisure Products, Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993). To recover lost profits, the patent-holder must establish "a causal relation between the infringement and its loss of profits. The patent owner must show that 'but for' the infringement, it would have made the infringer's sales." *Id.* (citation omitted). One method of establishing "lost profits" as a measure of damages is through satisfaction of a four-factor test set forth in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978). The *Panduit* test "requires a showing of (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) manufacturing and marketing capability to exploit the demand, and (4) the amount of profit that would have been made." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1329 (Fed. Cir. 2009) (citing *Panduit*, 575 F.2d at 1156). The second factor of the *Panduit* test, therefore addresses the availability of acceptable substitutes for the patented product, presenting a factual question for the jury to resolve. *See C.R. Bard, Inc. v. Boston Scientific Corp.*, 250 F.3d 761 (Fed. Cir. 2000) (reviewing on appeal a jury's award finding no acceptable substitutes.) The Federal Circuit has instructed that "[t]o be an acceptable noninfringing substitute, the alternative product *must have the advantages of the patented product.*" *Id.* (emphasis added). Therefore, it is the exclusive province of the jury to hear, evaluate, and weigh both parties' evidence

10

as to the availability of acceptable noninfringing substitutes. The Court will not prevent the jury from fulfilling this duty.

    B.  Reasonable Royalty

Second, Cal-Royal seeks to exclude Crawford's testimony identifying a reasonable royalty rate of 33%, for several reasons. First, Cal-Royal argues that the 33% rate is significantly higher than the royalty rates contained in several licensing agreements considered by Crawford in preparing his expert opinion. Second, Cal-Royal argues that the rate offered inappropriately relies upon the "entire market value rule," citing Federal Circuit's decision in *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) for the proposition that the entire market value approach to establishing a reasonable royalty rate may not be utilized "where the patented component does not create the basis for customer demand." *Uniloc*, 632 F.3d at 1320. Lastly, Cal-Royal argues that testimony as to "prior reluctance to license" is inadmissible because it is predicated upon inadmissible hearsay.

Regarding the licensing agreements, Sargent acknowledges that Crawford did receive and several licensing agreements during the course of his analysis this case, however Sargent notes that Crawford ultimately did not rely on these agreements, finding that they were dissimilar to the patented product at issue. As the Federal Circuit has recognized, "the licenses relied upon by the patentee in proving damages [must be] sufficiently comparable to the hypothetical license at issue in suit." *Uniloc*, 632 F.3d at 1316. "[T]here must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical

11

negotiation at issue in the case." *Id.* at 1317. Where no analogous licenses are available as a frame of reference, expert testimony may be offered opining on a reasonable royalty rate, provided that such testimony "carefully tie[s] proof of damages to the claimed invention's footprint in the marketplace." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). As these cases make clear, the question of a reasonable royalty rate and the similarity of licensing agreements as a basis of reference for arriving at a reasonable royalty rate, are questions of fact. This argument raised by Cal-Royal is therefore yet another attempt to usurp the role of the jury. At trial, the Parties will each have the opportunity to present evidence regarding a reasonable royalty rate, and to challenge the rates proposed by the opposing party. The Court will not foreclose the jury's review of this question of fact.

    Cal-Royal's argument regarding the entire market value method is similarly flawed. The Court cannot preclude testimony regarding the entire market value methodology at this stage without having first entertained Sargent's evidence as to damages to discern whether the factual predicate for relying upon this methodology has been satisfied. This is yet another premature attempt to exclude Sargent's evidence.

    Cal-Royal's assertion that Crawford's testimony regarding Sargent's history of a reluctance to issue licenses is inadmissible hearsay is misguided in light of Rule 703 of the Federal Rules of Evidence, providing that experts may rely on inadmissible evidence of the type reasonably relied upon on by experts in the field. Fed. R. Evid. 403.

### C. Prejudgment Interest

Third, Cal-Royal seeks to exclude Crawford's testimony as to prejudgment interest, arguing that the question of whether or not to award prejudgment interest is within the Court's discretion, and is not a question for the jury.

In the interests of efficiency and preserving judicial economy, the Court will allow testimony as to prejudgment interest during the course of the trial, but will do so outside of the presence of the jury.

### III. Sargent's Motion in Limine to Exclude Belatedly Presented Opinions and Data in the Supplemental Report of Defendant's Designated Expert Witness George Miller

To the extent that the supplement to George Miller's expert report addresses anything other than the figures added to Mr. Crawford's updated expert report, dated August 27, 2012 and served on Cal-Royal on June 5, 2012, Sargent's motion in limine is GRANTED. The Court will identify at the Pretrial Conference those portions of Mr. Miller's supplemental report which exceed the scope of Mr. Crawford's updated report and are therefore inadmissible.

### IV. Conclusion

For all of the aforementioned reasons, Cal-Royal's motion in limine to exclude evidence, opinion and argument as to willfulness [Dkt. #183], and Cal-Royal's motion in limine to exclude John Crawford's testimony regarding lost profits, prejudgment interest, and reasonable royalty [Dkt. #185] are hereby DENIED.   Sargent's motion in limine to exclude belatedly presented opinions and data in the supplemental report of Defendant's designated expert witness George Miller [Dkt. #179] is GRANTED.

The Court will address Cal-Royal's motion in limine regarding many of Sargent's trial exhibits [Dkt. #187] and Sargent's motion in limine addressing Cal-Royal's trial exhibits [Dkt. #180] at the Pretrial Conference. Additionally, the Court will address at the Pretrial Conference Sargent's motion in limine regarding Kaye Yashar, David Yashar, and George Miller's testimony as to Cal-Royal's redesigned mortise lock [Dkt. #178].

SO ORDERED, this 27th day of July, 2012 at Hartford, Connecticut

/s/
Vanessa L. Bryant,
United States District Judge